The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert J. Thomas, Defendant-Appellant.

(No. 61245; ▮▮▮▮▮▮▮▮▮▮)

First District (1st Division)—December 5, 1975.

Eugene Propp and David V. Schultz, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, Robert J. Thomas, appeals from a conviction for being in actual physical control of a vehicle while under the influence of intoxicating liquor in violation of the Illinois Vehicle Code. (Ill. Rev. Stat. 1973, ch. 95½, § 11—501(a).) He was tried without jury, fined $100 plus costs and ordered to surrender his driver's license under a mandatory revocation provision of the statute. At the time of his arrest, the defendant resided in Chesterton, Indiana. He testified that on the afternoon of March 26, 1974, at approximately 3 o'clock he visited a tavern in Gary, Indiana, had one bottle of beer, ordered a second bottle and remembered nothing that happened after that for a period of one month. Chicago police officers found the defendant and his car on Indianapolis Boulevard in the southeast part of Chicago at about 4:40 a.m. on March 27. The car was off the street, wrapped around a light pole. The front of the vehicle had extensive damage, the light pole was damaged and a city fire plug about 10 to

15 feet behind the car was knocked over. The defendant was behind the wheel, the key was in the ignition, the car was in drive with the motor running and the doors closed. At no time did the officers see the defendant operating his automobile.

One of the police officers who came upon the defendant testified there was a strong odor of alcohol on the defendant's breath, his face and eyes were red, his attitude was uncooperative, his clothes were slightly messed up and in walking to the squad car he swayed slightly. The officer also testified that the defendant was drowsy and his speech was slurred.

The police officers took the defendant to the South Chicago Community Hospital where he received a medical check and was released to the officers' custody. Because of his physical condition, the defendant was unable to take the standard performance tests administered by the police to determine sobriety. The officer expressed the opinion that the defendant was under the influence of intoxicating beverages.

Later, on the morning of the arrest, the defendant was taken to the Bridewell Hospital where he stayed for 3 days. On March 30, 1974, he was transferred (by ambulance) to a hospital in Gary, Indiana, where he was found to have an intracerebral hematoma of the left side of the brain necessitating the performance of a craniotomy procedure to relieve the blood clot. The defendant remained hospitalized in Gary until May 2 and was then transferred to Hines Veteran's Hospital where he remained as an in-patient for 3 weeks to receive treatment for his head injury. While in the Gary hospital, he was unconscious for almost a month.

The police officer testified that while at the police station the defendant told him he had been in Indianapolis, Indiana, the previous day, leaving there about 7 p.m. He told the officer he had been drinking beer and had a couple of shots of whiskey. He did not know when he started to drink but told the police officer he stopped drinking at 7 p.m. on March 26. The officer acknowledged that in a first aid class he had learned that some of the symptoms of head injuries are drowsiness, lack of coordination and slowness of speech.

The defendant testified he could not recall being in Indianapolis, driving his car after he went to the tavern in Gary, being in the accident or how he got to the scene of the accident. Both the defendant and his wife testified the only intoxicating beverage he ever drank was beer.

Because the defendant failed to return home, his wife went to the tavern a friend told her he thought the defendant had visited the previous day. When she testified the bartender told her the defendant had been there, had hit the back of his head on the floor when he fell from

a stool and was then helped into a booth where he slept for awhile, the trial judge interrupted the testimony, although no objection had been interposed by the State, to rule that the testimony was hearsay and would not be received. However, on cross-examination, the trial judge, without characterizing the testimony as hearsay, permitted Mrs. Thomas to testify that the bartender told her he did not give the defendant any more to drink after he thought the defendant had enough, that the defendant was crawling on the floor of the tavern, that the bartender put the defendant in his car about 3 a.m. on March 27 and that he then left.

Two written statements of a Gary physician who treated the defendant after the accident were received in evidence without objection and without any ruling by the court that they were admitted for a limited purpose. In one of these exhibits the doctor stated that the defendant received a head injury on March 26 and in the other he stated that the defendant had been in an accident in which he sustained a head injury. At the hearing on the defendant's motion to vacate the judgment and for a new trial, the trial judge stated, "We have a medical report that * * * he was injured sometime prior to the occurrence and that he had sometime subsequent to the occurrence an operation, but no direct relationship that can be seen in the record * * * to support that he was not under the influence of intoxicating liquor."

The two basic questions in this appeal are whether the defendant suffered a head injury prior to his arrest and whether the defendant's physical condition at the time of his arrest may be rationally explained to have been the result of his head injury. We answer both questions in the affirmative and, therefore, conclude that the evidence did not establish beyond a reasonable doubt that the defendant was in physical control of a vehicle while under the influence of intoxicating liquor. It was the State's burden, as in the case of any criminal charge, to establish the defendant's guilt beyond a reasonable doubt. It was not the defendant's burden to prove he was not under the influence of intoxicating liquor.

Testimony that the breath of an accused smelled of liquor is not sufficient to prove that a person was intoxicated. (*People v. Holtz* (1974), 19 Ill.App.3d 781, 788, 313 N.E.2d 234; *People v. Winfield* (1973), 15 Ill.App.3d 688, 689-90, 304 N.E.2d 693; *People v. Clark* (1970), 123 Ill.App.2d 41, 259 N.E.2d 636.) The officer's testimony established that the defendant acted in a confused and disoriented manner, but all of the symptoms the officer observed such as the defendant's slurred speech, unsure balance and red face and eyes could have been caused either by the head injury the defendant suffered or by the traumatic impact of the accident in which the defendant was involved before the police officers

arrived at the scene. *People v. Holtz* (1974), 19 Ill.App.3d 781, 788, 313 N.E.2d 234; *People v. Winfield* (1973), 15 Ill.App.3d 688, 689-90, 304 N.E.2d 693; *People v. Clark* (1970), 123 Ill.App.2d 41, 259 N.E.2d 636.

There is no dispute that shortly after his arrest the defendant was operated on for a serious brain injury. There is no evidence that he suffered his injury while in custody; on the contrary the evidence points to the inescapable conclusion that the defendant received his brain injury either prior to the accident, as the physician who treated the defendant asserted in his statement received in evidence, or at the time of the accident.

The symptoms the police officer relied upon in forming his opinion that the defendant was intoxicated could have been caused by his brain injury rather than by intoxication; the evidence, therefore, leaves reasonable doubt as to the defendant's intoxication. The trial judge acknowledged as much during the hearing on defendant's post-trial motion when he stated that the defendant's symptoms could be attributed to his head injury or to narcotics or to alcohol. In the three decisions referred to above, judgments of conviction were reversed because the defendant suffered physical injuries which the arresting officers observed and which the reviewing courts concluded could have produced the symptoms that the arresting officers concluded indicated intoxication.

In this case, the defendant's head injury was not marked by any apparent trauma, but the fact that there was an injury at the time of the arrest casts doubt on the reliability of the arresting officer's opinion. This is particularly true because the officer conceded that his first aid training taught him that a head injury might produce several of the symptoms he observed when he saw the defendant.

There is no evidence here as to the amount of alcohol the defendant drank prior to the accident other than his statement to the arresting officer that he had beer and a couple of shots of whiskey and the bartender's conversation with the defendant's wife. The trial judge should have regarded the defendant's statement with great caution because of the head injury from which defendant was suffering when he made it, the defendant's obvious confusion at the time demonstrated by his statement to the police officer that he had been in Indianapolis and the testimony of both the defendant and his wife that he never drank anything but beer. Since the court on its own motion properly excluded Mrs. Thomas' hearsay testimony that the bartender told her the defendant hit the back of his head on the floor when he fell off a stool, fundamental fairness requires that all of her conversation with the bartender be disregarded.

The decisions the State relies upon to support the weight to be given

á police officer's opinion regarding intoxication are distinguishable. *People v. Bies* (1971), 2 Ill.App.3d 1001, 276 N.E.2d 364, holds that the testimony of an officer not based on scientific tests can be sufficient to establish intoxication. But, in that case in addition to the physical condition of the defendant the arresting officer witnessed his erratic driving and in part based his opinion upon those observations. Similarly in *People v. MacPhail* (1974), 24 Ill.App.3d 399, 321 N.E.2d 386, where the defendant contended a previous neck injury caused his unstable condition, defendant's car was observed weaving from lane to lane and his car had its brake lights on. This was in addition to the defendant's unsure and hesitant performance when given sobriety tests. In *People v. Casa* (1969), 113 Ill.App.2d 1, 251 N.E.2d 290, the arresting officer testified the defendant drove off twice after he stopped the defendant for a traffic violation and refused to get out of his car or produce his driver's license. There was no evidence in *Casa* that the defendant was suffering from an injury.

Because the defendant was suffering from a head injury so severe that he required a serious operation and remained unconscious for a month and the arresting officer based his opinion of intoxication upon symptoms which could have been the result of the injury, the defendant's guilt was not established beyond a reasonable doubt. The conviction must, therefore, be reversed.

Judgment reversed.

GOLDBERG and EGAN, JJ., concur.