THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EWATHA GREEN, Defendant-Appellant.

Second District    No. 2—96—1291

Opinion filed September 25, 1998.

1056

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and John D. Kightlinger, of Inverness, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Byron P. Mitchell, of Evanston, for the People.

JUSTICE THOMAS delivered the opinion of the court:

Following a jury trial, the defendant, Ewatha Green, was convicted of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 1996)). The indictment alleged that the defendant knowingly and unlawfully delivered less than one gram of a substance containing cocaine, a controlled substance, to James Randall. The trial court sentenced the defendant to 14 years in prison. The defendant appeals, contending that (1) he was denied the effective assistance of counsel where his attorney failed to attempt to suppress a photograph that was taken of the defendant during a pat down search; (2) the trial

court erred in denying his motion *in limine* to suppress an eyewitness's identification of the defendant; (3) he was not proven guilty beyond a reasonable doubt; (4) the trial court improperly considered the State's race-neutral reasons for using its peremptory challenge to exclude a juror before allowing the defendant to establish a *prima facie* case of purposeful discrimination; and (5) the prosecutor made an improper comment during closing argument.

Prior to trial, defense counsel filed a motion to suppress certain identification evidence, alleging that the pretrial photographic identification procedure by which a police officer identified the defendant as the perpetrator of the crime was unnecessarily suggestive, resulting in a mistaken identification of the defendant. At the hearing on the defendant's motion to suppress, Rockford police officer James Randall testified that around 11:30 p.m., on January 30, 1996, he was working undercover and was assigned to purchase cocaine from drug dealers. At that time, the defendant approached Randall's unmarked van outside the Grand Hotel. The defendant then asked Randall if he wanted to purchase "some dimes." The officer responded that he did. The defendant then asked him to come inside the hotel. Officer Randall told the defendant that his legs hurt and that the defendant should get it and return. During their conversation, Officer Randall focused his attention on the defendant's face and was only about four feet away from the defendant. The officer noted that the area was well lit and there was ample lighting to allow him to view the defendant.

Randall further testified that after their initial conversation the defendant left and went inside the hotel. He returned a short time later and walked up to the driver's side window of the officer's van. From the time the defendant exited the hotel and until he reached the van, a space of about 10 yards, Officer Randall maintained eye contact with the defendant. Randall noted that there was no question that the man who approached his van the second time was the same person he had just negotiated with. When the defendant approached Randall's van this second time, the defendant displayed two plastic baggies containing crack cocaine. Officer Randall then handed the defendant two $10 bills, and the defendant gave the officer the two plastic baggies of cocaine. Officer Randall then identified the defendant in court as the man who sold him the two baggies of cocaine on the night in question.

Randall also testified that, after the defendant sold him the cocaine, Randall drove to a location three blocks away. A short time later, Officer Steven Johnson pulled up alongside Randall's van and handed him a photograph, asking him if it was the man who had just sold him drugs. Officer Randall looked at the photograph for about

two seconds and told Officer Johnson that it was definitely him. Randall then identified the photograph in court, marked as State's exhibit No. 2, as the photograph that Johnson showed him on January 30, 1996, of the man who sold him cocaine on that date. Randall explained on cross-examination that he was shown one photograph of the defendant by Johnson, but two photographs were actually taken of the defendant and tagged as evidence.

Rockford police officer Steven Johnson testified at the suppression hearing that he photographed the defendant at the Grand Hotel because it was suspected that the defendant had sold drugs to Officer Randall. Johnson noted that, during the transaction between the defendant and Randall, Johnson was watching with binoculars from a block and a half away and could also see the defendant, although not his facial features. Johnson further testified that Randall radioed a description of the defendant after the transaction as being a black male, about 5 feet 10 inches tall, weighing 165 pounds, and wearing a gray jacket and a dark stocking cap.

Johnson stated that after Randall drove away he waited for about 10 minutes for the defendant to come out of the hotel. When the defendant did not come out, Johnson drove past the doorway of the hotel and looked inside through a large glass window and saw what looked to be the same person standing inside the foyer of the hotel. Johnson then parked his car and went into the hotel. At that time, other officers were already with the defendant. Johnson then took a photograph of the defendant. About five minutes later, he showed the photograph to Officer Randall, who identified the man in the picture without any hesitancy as the person who had just sold him drugs.

At the conclusion of the hearing, the trial court denied the defendant's motion to suppress finding that the photographic procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and that Officer Randall had an independent basis for viewing the defendant.

Thereafter, the cause proceeded to a trial before a jury. Officers Randall and Johnson testified to the same general facts as presented at the hearing on the defendant's motion to suppress. Additionally, Randall testified at trial that two black males came near his window on the night in question but it was only the defendant who actually approached the window. Randall acknowledged that he did not mention the other black male in his police report. Randall further testified that the black male who actually approached his van asked Randall if he wanted some dimes. Randall explained that a "dime" is a street term for $10 worth of crack cocaine. Randall acknowledged that he had testified before the grand jury that he told the defendant that he

was looking for dimes. He clarified, however, that his police report was more accurate and stated that it was the defendant that actually came up to the window and asked Randall if the officer wanted some dimes. Randall described the man who sold him cocaine on the night in question as wearing a gray coat and black hat. Randall also noted that the man had facial hair and a thin mustache or something like scruff on the top of his lip.

Johnson testified that when the defendant was searched on the night in question, no weapons or contraband was found. Johnson noted that he did not want to arrest the defendant at that time for the prior delivery to Officer Randall to avoid disclosing Randall's undercover status as a police officer at that location. Thus, he would have arrested the defendant at that time only if contraband was discovered on his person. At the hotel Johnson took two photographs of the defendant, which were marked as State's exhibits Nos. 2 and 3 and admitted into evidence. The defendant stipulated at trial that State's exhibit No. 1, the two baggies sold to Officer Randall on the night in question, contained cocaine.

Rockford police officer David Cone testified that he was working with Randall in connection with the undercover narcotics operation on the night in question. Cone stated that his role was to hide in the back of Randall's van for security purposes in case trouble ensued with a drug transaction. He specifically noted that the possibility a suspect would be armed with a gun was a concern in any drug sale.

At the defendant's sentencing hearing, the defendant presented three letters that he wrote to the trial court. Those letters are part of the record on appeal. One of the letters states that the two Polaroid photographs taken of him at the hotel on the night in question were taken "at the same time" he was being searched.

On appeal, the defendant first argues that his trial counsel was ineffective in failing to argue that his photograph was illegally obtained after a fruitless search and should have been suppressed. He further argues that his counsel should have questioned the officers on cross-examination about the grounds for the stop and that counsel should have called the defendant to testify with respect to the details of his detention and search in the hotel lobby.

■ A defendant alleging a violation of his sixth amendment right to effective assistance of counsel must generally meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and recognized by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, the defendant must (1) show that his counsel's performance fell below the objective standard of

reasonableness; and (2) demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered if it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■ Here, we find that the defendant has not shown, under the second prong of the *Strickland* analysis, that there is a reasonable likelihood that, but for counsel's inaction, the result of the suppression hearing would have been different. An officer may make a valid investigatory stop absent probable cause to arrest, provided the officer's decision is based on specific and articulable facts and reasonable inferences therefrom that warrant the investigative intrusion. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). This rule has been codified by section 107—14 of the Code of Criminal Procedure of 1963, which provides in part:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***." 725 ILCS 5/107—14 (West 1996).

An officer may frisk a suspect pursuant to *Terry* if he has reason to believe that he is dealing with an armed individual and that the safety of the officer or others is in danger. *People v. Spann*, 237 Ill. App. 3d 705, 709 (1992). The justification for the frisk is to protect the officer or others nearby. *Spann*, 237 Ill. App. 3d at 709.

■■ In the present case, the record clearly shows that the detention of the defendant for purposes of a *Terry* stop and frisk was proper. The defendant acknowledges on appeal that the evidence presented showed that a crime had been committed in the immediate vicinity of the hotel, the defendant matched the description of the suspect, and the defendant was apprehended in the same hotel lobby where the suspect had been previously observed entering and exiting. Moreover, there was testimony that guns were of special concern at this location in dealing with suspected drug dealers. Thus, the police officers could reasonably infer that the defendant was armed and dangerous and that a *Terry* frisk was necessary to ensure their safety and the safety of others. The defendant has not shown any way that he might have been prejudiced by defense counsel's decision not to further cross-examine Officers Randall and Johnson about the grounds for the stop. Likewise, the defendant does not show how he was prejudiced by not

testifying at the hearing on the motion to suppress. Additionally, we note that these matters could be characterized as legitimate trial strategy and would not amount to ineffective assistance of counsel.

■ Having determined that the defendant has not offered anything on appeal to suggest that the stop and frisk were improper, we turn to the question of whether defense counsel was ineffective for failing to argue that the defendant's photograph was illegally obtained. We find that defense counsel was not ineffective for failing to argue that point because it is without merit and would not have affected the outcome of the suppression hearing.

Generally, police surveillance involving the use of photography to memorialize what has been seen by the naked eye does not constitute a search if the observation itself was not a search. 1 W. LaFave, Search & Seizure § 2.2(c), at 344-45 (2d ed. 1987). Moreover, even if the taking of the defendant's photograph by Officer Johnson could be considered a search or seizure for fourth amendment purposes, we would nonetheless find that it was proper under the plain view doctrine.

In *Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990), the Supreme Court held that for the plain view doctrine to operate an officer must not violate the fourth amendment in arriving at the place from which the evidence could be plainly viewed, the evidence must be in plain view, and its incriminating character must be readily apparent. *Horton*, 496 U.S. at 136, 110 L. Ed. 2d at 123, 110 S. Ct. at 2308. In so holding, the *Horton* court rejected an additional requirement previously set forth in the plurality opinion of *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), that the discovery of the evidence in plain view must be inadvertent. *Horton*, 496 U.S. at 136, 110 L. Ed. 2d at 123, 110 S. Ct. at 2307.

Here, Officer Johnson took the photographs of the defendant in a public place where it was lawful for him to be. The defendant admitted in a letter presented to the trial judge at sentencing that the photographs were taken at the same time as the search. The defendant was in plain view of the officer and the incriminating nature of the photographs was readily apparent to the officer. Under the circumstances, we find no violation of the fourth amendment where Officer Johnson simply memorialized in a photograph what he was entitled to view in a public place, and that, even if the taking of the photos amounted to a seizure, it was allowable under the plain view doctrine. Accordingly, we find that the defendant cannot satisfy the prejudice prong of the *Strickland* test, and his claim of ineffective assistance of counsel must fail.

The defendant next argues that the trial court erred in failing to

suppress the identification evidence. He contends that the identification procedure was unnecessarily suggestive and that Officer Randall's identification of the defendant lacked reliability.

■ In *People v. Miller*, 254 Ill. App. 3d 997 (1993), the court discussed the admissibility of identification evidence as follows:

"For identification evidence to be inadmissible, a defendant must meet the burden of proving that the identification procedures were 'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' [Citation.] Whether due process has been violated in a particular case depends on the totality of the circumstances surrounding the identification. [Citation.]

Suggestive confrontations are disfavored because they increase the likelihood of misidentification. [Citation.] Where there is 'a very substantial likelihood of irreparable misidentification,' admission of identification evidence violates due process. [Citation.] Thus the determination as to whether due process has been violated is two-part. 'This two-part test involves an examination into, first, the suggestiveness of the identification, and, second, in the wake of a suggestive out-of-court identification, the reliability of the out-of-court identification and later in-court identification.' [Citation.]

The reliability factors to be considered in determining the likelihood of misidentification include:

'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' [Citation.]" *People v. Miller*, 254 Ill. App. 3d at 1003-04.

■ Here, assuming *arguendo* that the procedure utilized was unnecessarily suggestive, which consisted of showing Officer Randall a single photograph to determine the identity of the offender, we must examine the reliability factors to determine whether the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Turning to the reliability factors, we note that Officer Randall had an excellent opportunity to view the defendant at the time he committed the crime. The officer observed the defendant from as close as four feet away and maintained constant eye contact. The lighting in the area was more than adequate to allow the officer to observe the defendant's facial features, and nothing obstructed the officer's view of the defendant. Furthermore, Officer Randall's degree of attention was high because he knew that he would have to identify the offender at a later date. The officer's de-

scription of the offender matched the defendant in such important respects as describing accurately the defendant's race, facial hair, and articles of clothing. The officer demonstrated a high level of certainty in his subsequent identification of the defendant. Finally, a very short amount of time elapsed from the officer's encounter with the defendant during the drug transaction until he positively identified the defendant's photograph. Under the circumstances, we find that the identification was reliable and based on an independent recollection of the defendant. Accordingly, we find that the trial court's decision to deny the defendant's motion to suppress was not against the manifest weight of the evidence.

The defendant next argues that he was not proved guilty beyond a reasonable doubt.

■ It is well settled that upon judicial review the relevant question is whether, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A single witness's identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Carini*, 254 Ill. App. 3d 1, 9 (1993). Minor inconsistencies and discrepancies in the testimony of a witness do not render the testimony unworthy of belief and affect only the weight to be given the testimony. *People v. Kosyla*, 129 Ill. App. 3d 685, 701 (1984). It is the jury's prerogative to weigh testimony in light of the discrepancies and conflicts, to accept or reject as little of the witness's testimony as it pleases, and to draw reasonable inferences from that testimony. *Kosyla*, 129 Ill. App. 3d at 701.

■ As previously noted, the evidence showed that Officer Randall viewed the defendant in a well-lit area, while conversing with him from about four feet away with nothing obstructing his view. The officer was attentive to the defendant's appearance, knowing that he would later have to identify him. He then clearly identified the defendant both out of court and in court. The fact that no money or contraband was found on the defendant during the search did not create a reasonable doubt of guilt in light of Randall's unequivocal identification and the fact that the defendant would have had an opportunity to dispose of any contraband items between the time of the drug sale and the search. Under the circumstances, we find that a rational trier of fact could have found that the State proved the defendant guilty of the charged offense beyond a reasonable doubt.

The defendant next argues that the trial court improperly considered the State's race-neutral reasons for exercising its peremp-

tory challenge before allowing the defendant to establish a *prima facie* case of purposeful discrimination. In support of his position, the defendant relies on *People v. Bohanan*, 243 Ill. App. 3d 348 (1993).

■ In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the equal protection clause. The analysis set forth in *Batson* permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process. *Hernandez v. New York*, 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1865-66 (1991). First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Hernandez*, 500 U.S. at 358-59, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

In *Hernandez*, the defendant raised a *Batson* objection, but the prosecutor did not wait for a ruling on whether the defendant had established a *prima facie* case of racial discrimination. Instead, the prosecutor volunteered his reasons for striking the jurors in question. As a result, the trial court had no occasion to rule that the defendant had or had not made a *prima facie* showing of intentional discrimination. Nevertheless, the Supreme Court in *Hernandez* did not find this procedure improper, stating:

> "This departure from the normal course of proceeding need not concern us. *** Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

In *Bohanan*, the case relied upon by the defendant, defense counsel made a *Batson* motion based on the State's exclusion of three minorities. The trial court asked the State for "some cogent reasons." *Bohanan*, 243 Ill. App. 3d at 348. The State responded that two of the potential jurors were divorced and lived on the south side. The trial court rejected the residence argument but never articulated a specific ruling as to the sufficiency of divorce as a race-neutral reason for exclusion, and the two were excluded from sitting on the jury. The appellate court in *Bohanan* remanded the cause, finding that the trial court failed to allow the defendant to establish a *prima facie* case of

discrimination before ruling on the State's race-neutral reasons for the exclusions and then never ruled on the ultimate issue of purposeful discrimination.

■■ *Bohanan* is distinguishable from the present case. Here, defense counsel never did make a *Batson* motion. Instead, it was the trial judge that called the prosecutor and defense counsel into his chambers to make a record concerning the excusal of the potential juror in question, noting that he was an African-American. The State offered race-neutral reasons for the peremptory challenge, indicating that the male juror had a nonconservative appearance. The State noted that he was wearing two large gold earrings and disheveled clothing, and his body language indicated he was not interested in being a juror. The State further noted that it had reason to believe the potential juror had a criminal record. The State also noted that defense counsel would not be able to make a *prima facie* showing because the State had kept on the jury the only other African-American among the potential jurors. Defense counsel, however, was allowed to make all of his arguments regarding a *prima facie* case and to address the State's race-neutral reasons. At the conclusion of the arguments presented by defense counsel and the prosecutor, the trial court found that the State had not engaged in a pattern of excluding African-American jurors and that there were valid race-neutral reasons for the exclusion of this particular juror. At the request of defense counsel, the trial court stated that the factors it found in support of the validity of the State's race-neutral reasons were the potential juror's manner of dress, body language, and earrings. Defense counsel did not raise any objection with respect to the process leading to the court's ruling.

The present case differs from *Bohanan* in that here the trial court ruled against the defendant on the *prima facie* showing, finding that there was no pattern of exclusion. The court also ruled in favor of the State on its race-neutral reasons and therefore found that there was no purposeful discrimination. Thus, *Hernandez* is controlling here, and the preliminary question of whether the defendant had made a *prima facie* showing becomes moot. See *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

■■ Lastly, the defendant argues that the prosecutor improperly commented during closing argument that the defendant could have made the drug sale to "a child of this community."

Improper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Caballero*, 126 Ill. 2d 248, 273 (1989). Under the circumstances presented here, we do not find that the defendant suffered prejudice from the comment or that it amounted to reversible error. The comment

was so limited and brief that it could not have led the jury to convict the defendant in light of the evidence presented against him.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.