NO. 4-07-0018          Filed 8/13/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| CHAD A. HOSTETTER, | ) | No. 06DT77 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In November 2006, a jury found defendant, Chad A. Hostetter, guilty of driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2006)). In January 2007, the trial court sentenced defendant to 24 months' probation with the condition that he serve 30 days' imprisonment with credit for 15 days served.

Defendant appeals, arguing the State (1) committed plain error when, during direct examination and the State's case in chief, the State elicited testimony that defendant invoked his right to silence by asking for an attorney and (2) failed to prove him guilty beyond a reasonable doubt.

Because the State did not commit error when it elicited testimony that defendant requested counsel and the State presented sufficient evidence of defendant's guilt, we affirm.

I. BACKGROUND

The jury trial commenced on November 9, 2006. For clarity, this court will first discuss the general facts elicited at trial and then more specifically discuss the testimony relating to defendant's request for counsel.

A. Testimony Elicited at Trial

On April 2, 2006, at approximately 1:30 a.m., defendant was observed trying to repeatedly drive his vehicle over a gravel embankment in the parking lot behind Rathbun's Tap, a local tavern. The gravel embankment operated like a dike to prevent cars from driving to the back of the neighboring store. While pictures of the parking lot and gravel embankment were admitted into evidence at trial, the pictures are not contained in the record on appeal.

Robert McCormick, a sergeant with the Fairbury police department, observed defendant attempting to free his vehicle from the gravel embankment. When defendant got his vehicle free from the embankment, he again attempted to drive over the embankment. Sergeant McCormick activated his lights and exited his vehicle.

Sergeant McCormick testified that when defendant exited his vehicle, he seemed unsteady, staggered, and walked in a serpentine manner toward Sergeant McCormick. Defendant told Sergeant McCormick that he had not been drinking "since earlier." Defendant also told Sergeant McCormick that he was parking the

truck so that someone could give him a ride home.

Sergeant McCormick testified he had received training to determine when someone was under the influence of alcohol. Sergeant McCormick believed defendant was under the influence of something based on (1) defendant's speech, which included pausing frequently, repeating himself, slurring, and stringing his words together; (2) defendant's dilated pupils; (3) his swaying; and (4) the way defendant drove the truck. Sergeant McCormick thought dilated pupils were a sign of alcohol intoxication.

Sergeant McCormick did not have defendant perform field-sobriety tests because of the gravel and the fact that they were attracting a lot of attention. Sergeant McCormick did ask defendant to perform on the portable breath test (PBT) machine. Despite two attempts, defendant only gave a partial breath sample. The reading based on the partial breath sample was 0.042. Sergeant McCormick testified that a full sample is more accurate than a partial sample. Sergeant McCormick also based his conclusion that defendant was under the influence based on the partial sample reading of 0.042 on the PBT.

Sergeant McCormick placed defendant under arrest for DUI and put defendant in his squad car. The DUI citation states the arrest took place on the public highways, specifically, on the north alley of the 200 block of East Locust in Fairbury. Sergeant McCormick drove to the hospital, a 20-minute drive.

Sergeant McCormick intended to request blood and urine tests because he thought defendant was under the influence of something more than alcohol. Defendant fell asleep on the way to the hospital. Once they arrived at the hospital, Sergeant McCormick had to hold defendant up and prevent defendant from walking into a closed door.

Sergeant McCormick testified that defendant's pupils remained dilated when they entered the well-lit hospital. According to Sergeant McCormick, that was a sign of being under the influence of alcohol. At the hospital, defendant refused to submit to the blood and urine tests. Defendant also told Sergeant McCormick he had recently "beat another DUI."

Defendant never told Sergeant McCormick that he was tired or that he had worked a 12-hour shift the previous evening. Sergeant McCormick testified that sleep-deprived people do walk unsteadily, have slurred speech with pauses, drive erratically, and fall asleep. Sergeant McCormick did not believe that a sleep-deprived person would have dilated pupils.

David Fritts, the police officer who inventoried defendant's vehicle, testified he found (1) two bottles of Hornsby's Hard Cider in a toolbox in the back of the truck; (2) one cooler containing two unopened bottles of Hornsby's Hard Cider on ice; and (3) a second cooler containing six unopened bottles of Hornsby's Hard Cider on ice. Whether the two bottles

found in the toolbox were empty or unopened is unclear. The State rested.

Defendant called Derrick Renken, a road deputy for the Livingston County sheriff's department, to testify. Deputy Renken testified that he had stopped defendant's vehicle earlier in the evening, at approximately 9:39 pm, after receiving a dispatch call. When Deputy Renken made contact with the vehicle, the vehicle was traveling down the center of the roadway with the left turn signal activated for about one mile. The vehicle also had a hanging exhaust.

Deputy Renken effectuated a stop, approached the vehicle, and asked the driver if he had had anything to drink that night. The driver, whom Deputy Renken identified as defendant, said he had had one alcoholic beverage at his residence. When defendant reached in to the glove box to retrieve his registration and insurance, Deputy Renken saw an empty, clear bottle of Hornsby Hard Cider. Deputy Renken also noticed two lunch coolers containing unopened bottles of Hornsby's Hard Cider located in the front of defendant's truck bed.

Deputy Renken searched defendant's vehicle for open alcohol and found a second empty bottle of Hornsby's Hard Cider. Deputy Renken agreed the police report might have said two unopened alcoholic-beverage bottles were seen in the glove box.

He explained that he was trying to testify by memory, and he believed all the bottles he found in the truck were empty. He stated if his testimony was contradictory to his report, then the information in his report was more accurate. Deputy Renken did not refresh his recollection with his report, and the report was never admitted into evidence.

Deputy Renken asked defendant to perform field-sobriety tests. Defendant successfully completed the horizontal-gaze-nystagmus and the one-legged-stand tests. Defendant failed the walk-and-turn test because he did not follow the instructions. However, Deputy Renken did not believe he had enough evidence to charge defendant with DUI. Therefore, Deputy Renken cited defendant for improper lane usage and illegal transportation of alcohol and issued a written warning for the hanging exhaust. When Deputy Renken returned to defendant's vehicle to give him the citations, he discovered that defendant had fallen asleep. Once Deputy Renken was able to get defendant's attention, defendant looked extremely confused. Defendant told him that he had recently been working 12-hour shifts at R.R. Donnelley in Dwight. Deputy Renken told defendant he might want to drive home and stay home for the evening.

Deputy Renken testified that dilated pupils did not indicate anything about being under the influence of alcohol. Dilation of the eyes generally occurs with the use of a

depressant or cannabis.  On cross-examination, Deputy Renken agreed that walking in a serpentine motion, slurred speech, and repeating oneself can all be signs of being under the influence of alcohol.

Defendant testified on his own behalf.  Defendant left work at 7 a.m. on Saturday, April 1, 2002, after working a 12-hour shift.  Defendant's time card from work was admitted into evidence but is not included in the record on appeal.  Defendant testified he had just recently changed from first shift, which runs from 7 a.m. until 3 p.m, to third shift, which runs from 11 p.m. until 7 a.m.  He had worked 49 hours that week.  Defendant had only three to four hours of sleep that Friday and was not used to sleeping during the day.

Defendant testified that after leaving work, he went home to Chenoa, changed clothes, and then went to Fairbury to the Saturday auction.  Around 2 or 3 p.m., defendant returned to Chenoa, ate dinner, showered, changed clothes, and left again at about 9:30 p.m.  Defendant drank one Hornsby's Hard Cider between 8 and 9 p.m.  Hornsby's Hard Cider is the only alcoholic beverage defendant drinks.  Defendant did not take any drugs or medications to help him stay awake.

Defendant drove to Fairbury to find a friend who lived outside town.  Defendant agreed that Deputy Renken accurately described the stop.  However, defendant testified that Deputy

Renken found two unopened bottles in the glove compartment and an empty bottle under the passenger seat. Defendant was not sure how the empty bottle got there.

Defendant had purchased the hard cider, sold in six-packs, at the Apollomart in Chenoa. Defendant placed two unopened bottles in his glove compartment because all the bottles would not fit in the coolers.

Defendant did not take Deputy Renken's advice and return home. Instead, he continued his attempt to find his friend's house. When he could not find the house, defendant went to Fairbury and stopped at another friend's house. Defendant then went to Rathbun's Tap to find another friend. He arrived between 11:30 p.m and 12 a.m. and stayed until the bar closed at 1 or 1:30 a.m. Defendant did not consume any alcohol because Rathbun's Tap does not carry the hard cider he likes. Except for the bottle he drank at his home, defendant did not consume any other alcohol that night.

Defendant testified that when his truck got "hung up" on the gravel embankment, he was trying to move his vehicle to another parking spot so that it would not be towed overnight. Defendant tried to drive over the embankment because, due to cars leaving through the alley, that was the only way to move the truck to the back of Rathbun's Tap to prevent it from being towed. Defendant testified he had difficulty getting over the

gravel embankment because of "lack of vision," lack of lighting, and an inability to maneuver around the gravel embankment because of other cars leaving the bar.

When Sergeant McCormick showed up, defendant told him he was trying to park the vehicle so he could get a ride home. Defendant was going to look for a ride to Chenoa because none of his friends would give him a ride back to Chenoa.

Defendant testified he had trouble walking because of the gravel and the uneven surface and because he was very tired. Defendant testified he fell asleep on the way to the hospital because he was very tired. Sergeant McCormick never asked defendant to perform field-sobriety tests.

Defendant admitted, on cross-examination, telling Sergeant McCormick he had a previous DUI dismissed but denied saying he "beat the DUI." The previous DUI occurred that year in La Salle County the Thursday before the Super Bowl. In that instance, defendant took the Breathalyzer and blew a 0.04, and the charge was dismissed.

In rebuttal, the State submitted certified copies of defendant's prior convictions for theft and unlawful possession of a controlled substance. Neither exhibit was included in the record on appeal.

B. Testimony Regarding Defendant's Request for Counsel

Sergeant McCormick testified that at the hospital,

defendant refused to submit to the blood and urine tests.  The following exchange occurred between Sergeant McCormick and the prosecution:

"Q. Why--Do you know why he refused those tests?

A. He stated that he wouldn't take the test unless he had a lawyer present.

Q.  Okay.  Now, to perform this sort of test, is an attorney required?

A.  No.

Q.  Does the defendant have a right to an attorney for these tests?

MR. BERTRAM [(defense counsel)]: Objection.

THE COURT:  Basis?

MR. BERTRAM:  Foundation.

THE COURT:  Overruled.  You may answer.

A.  No, he doesn't.

Q.  But the defendant refused to take these tests?

A.  That's correct."

On cross-examination, defense counsel also elicited testimony from Sergeant McCormick that defendant asked to have his lawyer present before submitting to blood and urine tests and demanded

to call his lawyer.

Defendant testified, on direct examination, that when Sergeant McCormick asked him to submit to blood and urine tests, defendant said he would only do so if he could speak to his attorney. Defendant testified that Sergeant McCormick told him he did not have the right to speak to his lawyer and asked him again if he was willing to take the test. Defendant refused. Defense counsel asked defendant why he wanted to speak to his attorney. Defendant responded, "Because that is my right." On cross-examination, when asked whether he had some things to say to his attorney, defendant testified that he asked for his attorney. Defendant also testified he refused to submit to blood or urine testing because he had the right to speak to his attorney.

The State did not mention defendant's request for counsel during opening or closing arguments. Defense counsel, however, stated during closing arguments that defendant's refusal to take the blood and urine tests without an attorney present illustrated that defendant was not under the influence. Defense counsel stated defendant was "coherent enough to know" he should talk to a lawyer. Defense counsel also stated defendant's request for his attorney was proof that defendant was able to make a "conscious decision."

The jury returned a verdict finding defendant guilty of

DUI.  The trial court sentenced defendant as previously stated.

This appeal followed.

## II. ANALYSIS

Defendant argues the State committed plain error when, during direct examination and in the State's case in chief, the State elicited testimony that defendant invoked his right to silence by asking for an attorney.  Defendant also argues the State failed to prove him guilty beyond a reasonable doubt because of insufficient evidence that defendant was under the influence of alcohol.

### A. The State Did Not Violate Defendant's Right to Silence by Eliciting Testimony About Defendant's Request To Speak to an Attorney

Defendant first argues the State committed reversible error when it elicited testimony during its case in chief that defendant refused to give blood and urine samples without an attorney present.  Specifically, defendant asserts such request for counsel was equivalent to invoking the right to remain silent guaranteed by the fifth amendment.  U.S. Const., amend. V.

Defendant recognizes he has forfeited this issue by failing to object at trial and include the issue in a posttrial motion.  See People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988) (failure to object at trial or in a posttrial motion results in forfeiture of the issue on appeal).  However, defendant contends that this court should review the issue under

- 12 -

the plain-error doctrine.

The plain-error doctrine allows a reviewing court to consider an unpreserved issue. <u>People v. Herron</u>, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005). This court may review an error under the plain-error doctrine if (1) the evidence is closely balanced or (2) the error is "so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." <u>People v. Hall</u>, 194 Ill. 2d 305, 335, 743 N.E.2d 521, 539 (2000). However, to determine whether the alleged mistake rose to the level of plain error, we must first determine whether an error occurred. <u>People v. Johnson</u>, 218 Ill. 2d 125, 139, 842 N.E.2d 714, 722 (2005).

### 1. <u>No</u> <u>Error</u> <u>Occurred</u> <u>Because</u> <u>Defendant's</u> <u>Request</u> <u>for</u> <u>Counsel</u> <u>Was</u> <u>Not</u> <u>Equivalent</u> <u>to</u> <u>Asserting</u> <u>His</u> <u>Right</u> <u>to</u> <u>Silence</u>

The fifth amendment to the United States Constitution provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. To protect the fifth-amendment privilege against self-incrimination, the State must inform defendants of their rights to silence and counsel before they are questioned during a custodial interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612 (1966).

In <u>Doyle v. Ohio</u>, 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct. 2240, 2244-45 (1976), the Supreme Court

- 13 -

elaborated on Miranda and held that it would violate a defendant's due-process right if the State were permitted to use a defendant's postarrest, post-Miranda silence to impeach the defendant. The Court reasoned that the Miranda warnings carry an implicit promise that silence will carry no penalty. Doyle, 426 U.S. at 618, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245. Consequently, the Court held that it would be fundamentally unfair for the State to promise defendants they have the right to silence through the Miranda warnings and then use the resultant exercise of that right against them. Doyle, 426 U.S. at 618, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245.

Since Doyle, the Supreme Court has held, with respect to post-Miranda warnings, the right to remain silent also includes the "desire to remain silent until an attorney has been consulted." Wainwright v. Greenfield, 474 U.S. 284, 295 n.13, 88 L. Ed. 2d 623, 632 n.13, 106 S. Ct. 634, 640 n.13 (1986). In Wainwright, the Court held that the defendant's request to speak to an attorney after being given his Miranda warnings was equivalent to exercising his right to silence. Wainwright, 474 U.S. at 295, 88 L. Ed. 2d at 632, 106 S. Ct. at 640. As such, the State violated defendant's due-process rights when it used defendant's request for an attorney as substantive evidence of defendant's guilt. Wainwright, 474 U.S. at 295, 88 L. Ed. 2d at 632, 106 S. Ct. at 641.

- 14 -

Both Doyle and Wainwright involved postarrest, post-Miranda assertions of the right to remain silent. In this case, although defendant claims the issue involves a pre-arrest, pre-Miranda assertion of the right to remain silent, the record clearly demonstrates defendant was arrested. Therefore, this case involves the use of defendant's postarrest, pre-Miranda silence as substantive evidence of guilt. Because defendant was not given the implicit promise that silence will carry no penalty that is embodied in the Miranda warnings, defendant's due-process rights were not violated when the State elicited testimony regarding defendant's request to speak to his attorney. Griffith v. State, 55 S.W.3d 598, 606-07 (Tex. Crim. App. 2001) (en banc, finding the State's elicitation of the defendant's request for counsel did not violate his due-process rights because he had not been given his Miranda warnings). However, the State's elicitation of a defendant's postarrest, pre-Miranda silence can still violate a defendant's fifth-amendment right to silence.

In the context of a postarrest, pre-Miranda assertion of the right to remain silent, courts have made a distinction between impeachment use and substantive use. Where a defendant takes the stand, the State can use the defendant's postarrest, pre-Miranda silence for impeachment. Fletcher v. Weir, 455 U.S. 603, 607, 71 L. Ed. 2d 490, 494, 102 S. Ct. 1309, 1312 (1982). The federal circuits are split on whether the State can use

- 15 -

postarrest, pre-Miranda silence as substantive evidence of guilt. The Seventh, Ninth, and D.C. Circuits have held that postarrest, pre-Miranda silence is inadmissible as substantive evidence of guilt because that use violates the fifth-amendment right to silence. See United States v. Velarde-Gomez, 269 F.3d 1023, 1028-30 (9th Cir. 2001); United States v. Moore, 104 F.3d 377, 387-89 (D.C. Cir. 1997); United States v. Hernandez, 948 F.2d 316, 322-23 (7th Cir. 1991). The Fourth, Eighth, and Eleventh Circuits disagree and hold that the State's use of postarrest, pre-Miranda silence as substantive evidence of guilt does not violate the fifth-amendment right to silence. See United States v. Frazier, 408 F.3d 1102, 1109-11 (8th Cir. 2005); United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991); United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985).

This court need not, however, decide whether the State can use postarrest, pre-Miranda silence as substantive evidence of guilt because defendant's request to speak to his attorney was not an invocation of his right to silence. See Griffith, 55 S.W.3d at 603 (finding the defendant's request to speak to his attorney before deciding whether to submit to a breath-alcohol test was not the same as expressing a desire to remain silent). That is, when Sergeant McCormick asked defendant to submit to blood and urine tests, defendant was not subject to custodial interrogation. See Schmerber v. California, 384 U.S. 757, 760-

61, 16 L. Ed. 2d 908, 914, 86 S. Ct. 1826, 1830-31 (1966) (the State can force a defendant to submit to blood-alcohol testing without violating fifth-amendment privilege); People v. Bugbee, 201 Ill. App. 3d 952, 956, 559 N.E.2d 554, 556 (1990) (refusal to submit to a Breathalyzer test is not an act protected by the constitutional privilege against self-incrimination); People v. Kern, 182 Ill. App. 3d 414, 416, 538 N.E.2d 184, 186 (1989) (a defendant does not ordinarily have the right to consult with counsel prior to taking a Breathalyzer test). Consequently, defendant did not have the right to counsel under the fifth amendment when he requested to speak to his attorney.

Therefore, this case is distinguishable from Wainwright, which concluded that the defendant's request to speak to an attorney was equivalent to invoking the right to remain silent. In Wainwright, the defendant had the right to counsel and was informed of this right through the Miranda warnings. In contrast here, defendant did not have the right to counsel and was not promised the right to counsel through the Miranda warnings. Thus, defendant was not exercising a constitutional right to counsel when he requested his attorney. Defendant made the request because he erroneously believed he had the right to speak with his attorney before submitting to the blood and alcohol tests. As such, defendant's request for an attorney cannot be construed as an expression of his desire to remain

- 17 -

silent.

Moreover, defendant's sixth-amendment right to counsel was not triggered by Sergeant McCormick's request that he submit to a blood and urine test. The sixth amendment provides a defendant with the right to counsel only "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882 (1972). In the context of a driving-under-the-influence investigation, the compulsory withdrawal of blood is not a critical stage of the proceedings at which a defendant has the sixth-amendment right to counsel. United States v. Wade, 388 U.S. 218, 227-28, 18 L. Ed. 2d 1149, 1157-58, 87 S. Ct. 1926, 1932-33 (1967); cf. People v. Okun, 144 Ill. App. 3d 1066, 1070, 495 N.E.2d 115, 118 (1986) (discussing breath test). Therefore, defendant did not exercise his right to silence by refusing to submit to blood and urine tests without an attorney present.

### 2. Even if Error Occurred, Error Does Not Rise to Level of Plain Error

The mere fact, however, that defendant did not have a right to counsel or invoke his right to silence by requesting the presence of his attorney does not end the inquiry. Only relevant evidence should be admitted, and even relevant evidence may be excluded if its prejudicial effect substantially outweighs its

probative value.  People v. Ransom, 319 Ill. App. 3d 915, 921-22, 746 N.E.2d 1262, 1268-69 (2001).  Even though a defendant does not have the right to counsel when an officer requests blood and urine tests, the references to the defendant's request for counsel might be prejudicial and might have allowed the jury to improperly infer the defendant's guilt.  See Lajoie v. State, 237 S.W.3d 345, 353 (Tex. App. 2007) (court held that allowing the jury to hear videotaped recording of defendant's request for counsel, even though he did not have the right to counsel, was prejudicial).

Even if error occurred in this case, however, that error does not rise to the level of plain error.  Defendant argues the State's elicitation of the testimony and the "repeated references" to defendant's request for counsel prejudiced him and "could have tipped the balance in favor of a finding of guilt." We disagree.

The defendant bears the burden of proof under the plain-error doctrine.  Herron, 215 Ill. 2d at 186-87, 830 N.E.2d at 479-80.  The defendant must establish that the trial court committed error and that the error was prejudicial.  Herron, 215 Ill. 2d at 186-87, 830 N.E.2d at 479-80.  An error is prejudicial if the evidence in the case was so closely balanced that "the error alone severely threatened to tip the scales of justice against [the defendant]." Herron, 215 Ill. 2d at 187, 830 N.E.2d

at 479.

In this case, the evidence was not closely balanced. As discussed further below regarding defendant's sufficiency-of-the-evidence claim, the jury heard testimony about defendant's erratic driving, prior stop by the police, presence at a tavern, admission to drinking one hard cider, repeated futile attempts to drive over the parking lot embankment, partial PBT sample of 0.04, serpentine-like walk, slurred and disjointed speech, act of falling asleep in the police car, refusal to take blood and urine tests, and possession of at least one or two empty bottles in his car. In light of this substantial evidence of guilt, we conclude the isolated and inconspicuous comments likely had little, if any, prejudicial effect on the jury's finding of guilt.

Specifically, the record indicates that the evidence elicited by the prosecution was brief and isolated. The State did not overtly use defendant's request for his attorney as a means of proving defendant's guilt. Rather, the State elicited the testimony to explain why defendant refused to submit to the blood and urine testing. See State v. Fencl, 109 Wis. 2d 224, 238, 325 N.W.2d 703, 711-12 (1982) (finding the State's six isolated and brief comments regarding defendant's pre-arrest, pre-Miranda request for attorney were too subtle to be prejudicial). Further, defense counsel's failure to object suggests the alleged error was not serious. See Fencl, 108 Wis.

2d at 239, 325 N.W.2d at 712 (trial counsel's failure to object or raise the errors suggested counsel viewed the errors as not serious).

In fact, not only did defense counsel fail to object to the testimony, defense counsel also elicited testimony about defendant's request for counsel.  Defense counsel questioned Sergeant McCormick about the request on cross-examination, asked defendant about his request on direct-examination, and relied on the request during closing arguments to prove defendant was not intoxicated.  As such, defendant cannot argue he was prejudiced by the testimony because he took part in its elicitation.  See, e.g., People v. Schmitt, 131 Ill. 2d 128, 137, 545 N.E.2d 665, 668 (1989) (holding that "where *** a party acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby").  Therefore, even if error occurred, it was not plain error and does not warrant a new trial.

### B. The State Proved Defendant Guilty of DUI Beyond a Reasonable Doubt

Defendant next argues the State failed to prove him guilty of DUI beyond a reasonable doubt.  Specifically, defendant argues the State presented insufficient evidence that defendant was under the influence of alcohol because the State did not present evidence of field-sobriety or chemical tests, and the symptoms the State presented to prove intoxication are explainable by defendant's extreme fatigue.

## 1. Standard of Review

When a defendant challenges the sufficiency of the evidence, the test is whether, after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Ward, 215 Ill. 2d 317, 322, 830 N.E.2d 556, 559 (2005). The trier of fact determines the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn therefrom. People v. Curtis, 296 Ill. App. 3d 991, 999, 696 N.E.2d 372, 378 (1998). The existence of discrepancies in a witness's testimony does not warrant reversal, and minor discrepancies affect only the weight of the witness's testimony. People v. Green, 298 Ill. App. 3d 1054, 1064, 700 N.E.2d 1097, 1103 (1998).

## 2. Elements of DUI Charge

Section 11-501(a)(2) of the Illinois Vehicle Code provides that "[a] person shall not drive or be in actual physical control of any vehicle within this State while *** under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2006). A defendant is under the influence when, as a result of consuming alcohol or any other intoxicating substance, "'his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.'" People v. Gordon, 378 Ill. App. 3d 626, 631, 881 N.E.2d 563, 567 (2007), quoting Illinois

- 22 -

Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000).

The State can use circumstantial evidence to prove a defendant guilty of DUI.  People v. Diaz, 377 Ill. App. 3d 339, 345, 878 N.E.2d 1211, 1216 (2007).  Further, the credible testimony of the arresting officer by itself is sufficient to sustain a conviction of driving under the influence.  People v. Janik, 127 Ill. 2d 390, 402-03, 537 N.E.2d 756, 761-62 (1989) (holding that the arresting officer's testimony about the odor of alcohol, defendant's watery eyes, and defendant's poor performance on the field sobriety tests was sufficient evidence of intoxication).

### 3. The State Presented Sufficient Evidence That Defendant Was Under the Influence of Alcohol

Defendant argues the State did not prove him guilty beyond a reasonable doubt because the State did not present evidence of field sobriety tests or chemical tests.  The defendant's argument is without merit, however, because the State is not required to present scientific evidence to sustain a DUI conviction.  See People v. Casa, 113 Ill. App. 2d 1, 6, 251 N.E.2d 290, 293 (1969) (court held that scientific evidence is not necessary to sustain a conviction of DUI).

Defendant also argues the State did not prove him guilty beyond a reasonable doubt because the circumstantial evidence--defendant's alleged "symptoms" of intoxication--could also be explained by defendant's extreme fatigue.  Defendant

- 23 -

argues the evidence of his "serpentine" walking, slurred speech, disjointed and repetitive speech, and dilated eyes could have been caused by his lack of sleep, rather than from a state of intoxication. Consequently, defendant argues, the State did not prove him guilty beyond a reasonable doubt.

Defendant bases this contention on People v. Thomas, 34 Ill. App. 3d 578, 340 N.E.2d 174 (1975), which held that the State failed to prove the defendant guilty beyond a reasonable doubt because the symptoms the State presented to prove defendant's intoxication might have been the result of defendant's recent brain injury. Thomas, 34 Ill. App. 3d at 582, 340 N.E.2d at 177. In Thomas, the State relied on defendant's unsteady balance, slurred speech, disoriented mental state, red eyes and face, and the odor of alcohol to prove defendant was intoxicated. Thomas, 34 Ill. App. 3d at 580-81, 340 N.E.2d at 176. Because defendant's brain injury could have produced all the evidence the State presented to prove intoxication, except the odor of alcohol, which alone is insufficient, a reasonable doubt existed as to defendant's guilt. Thomas, 34 Ill. App. 3d at 580, 340 N.E.2d at 176.

This case is distinguishable from Thomas. Even if defendant's symptoms could be attributed to his lack of sleep, the State presented other circumstantial evidence sufficient to prove defendant was under the influence. The jury heard

defendant's admission of drinking at least one hard cider that evening. In addition, at least one or two empty bottles were found in defendant's vehicle. The jury could rely on the inference from the fact that defendant started with 12 bottles and ended the night with 10, and discredit defendant's testimony that Deputy Renken took two of the bottles. Moreover, defendant provided only partial PBT samples on two separate attempts. The jury was free to infer from the partial PBT samples that defendant was being evasive because he knew he was intoxicated. Defendant also testified that he was moving his vehicle because he was going to get a ride home to Chenoa. The jury was free to view this as a recognition by defendant he was unable to drive due to his intoxicated state.

Further, defendant refused to submit to blood and urine tests, which is statutorily permitted evidence that defendant knew he was intoxicated. See People v. Garriott, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993) (evidence of driver's refusal to submit to test is relevant because it allows the jury to infer that the defendant was aware of his intoxicated state); 625 ILCS 5/11-501.2(c) (West 2006) ("If a person under arrest refuses to submit to a chemical test ***, evidence of refusal shall be admissible in any civil or criminal action ***").

However, the record does not clearly establish whether the DUI occurred on private property or the public highway, and

consequently, whether the blood and urine test would have been obtained pursuant to the implied-consent statute. Neither party raises this issue. The DUI citation does state that the incident occurred on the public highways, specifically, on the north alley of the 200 block of East Locust in Fairbury. The implied-consent statute states that a defendant arrested for DUI is deemed to have given consent to chemical tests if he was driving upon the public highways. 625 ILCS 5/11-501.1(a) (West 2006) ("Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol *** in the person's blood" (emphasis added)).

Regardless, evidence of refusal is admissible whether the DUI occurred on private property or the public highways under section 11-501.2(c). 625 ILCS 5/11-501.2(c) (West 2006) ("If a person under arrest refuses to submit to a chemical test ***, evidence of refusal shall be admissible in any civil or criminal action ***"); see also Garriott, 253 Ill. App. 3d at 1051, 625 N.E.2d at 784 ("a refusal to submit to a [B]reathalyzer test is admissible regardless of whether that refusal occurs within the provisions of section 11-501.1 of the Code, the implied-consent statute" (emphasis in original)).

Here, the jury was free to reject defendant's claim

that the symptoms he exhibited were attributable to his extreme fatigue, rather than evidence of his intoxication.  See People v. Bonzi, 65 Ill. App. 3d 927, 932, 382 N.E.2d 1300, 1303 (1978) (the court held that the jury was free to reject the defendant's argument that the symptoms he displayed after an accident were due to his injuries rather than being evidence that the defendant was under the influence).  After weighing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found the elements of DUI proved beyond a reasonable doubt.  Therefore, we affirm the trial court.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction.  As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal.

Affirmed.

COOK and STEIGMANN, JJ., concur.