Filed 11/9/09    NOS. 4-09-0439, 4-09-0460 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: Jay. H., Jas. H., and T.W., Minors, | ) ) | Appeal from Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 08JA37 |
| v.   (No. 4-09-0439) | ) | |
| JASON HODGES, | ) | |
| Respondent-Appellant. | ) | |
| _____ | ) | |
| | ) | No. 08JA37 |
| In re: Jay. H., Jas. H., and T.W., Minors, | ) ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Petitioner-Appellee, | ) | |
| v.   (No. 4-09-0460) | ) | Honorable |
| SHANNON TOLER, | ) | Kevin P. Fitzgerald, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2009, the State filed an amended petition to terminate the parental rights of respondent mother, Shannon Toler, as to her children Jay. H. (born April 22, 2005), Jas. H. (born June 4, 2004), and T.W. (born September 9, 1994). In March 2009, the State filed a first supplemental amendment to its petition seeking to terminate the parental rights of respondent father, Jason Hodges, as to his children Jay. H. and Jas. H. (Respondent father is not T.W.'s biological father.) Following hearings in February and May 2009, the trial court found respondent mother and respondent father, respectively, unfit. At a separate May 2009 hearing, the court determined that it would be

(1) in the best interest of Jay. H. and Jas. H. to terminate the parental rights of both respondent mother and respondent father and (2) in T.W.'s best interest to terminate respondent mother's parental rights.

Respondent mother and respondent father appeal (Nos. 4-09-0460 and 4-09-0439, respectively), arguing that (1) the trial court erred by taking judicial notice of various documents at the best-interest hearing and (2) the court's best-interest findings were against the manifest weight of the evidence. We disagree and affirm.

## I. BACKGROUND

In March 2008, the State filed a petition for adjudication of wardship, alleging that Jay. H., Jas. H., and T.W. were neglected minors under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act), in that their environment was injurious to their welfare because respondent mother and respondent father (collectively, respondents) had unresolved issues of substance abuse (705 ILCS 405/2-3(1)(b) (West 2008)). At an April 2008 adjudicatory hearing, respondents admitted the State's allegations in its petition for wardship. After accepting the State's evidence, the trial court entered an order adjudicating Jay. H., Jas. H., and T.W. neglected minors. Following a July 2008 dispositional hearing, the court entered an order adjudicating Jay. H., Jas. H., and T.W. wards of the court and appointed

the Department of Children and Family Services (DCFS) as their guardian.

In January 2009, the State filed an amended petition to terminate parental rights, alleging, in pertinent part, that respondent mother was an unfit parent under section 1(D)(k) of the Adoption Act, in that she was alcohol dependent and addicted to drugs, other than those prescribed by a physician, for at least one year immediately prior to the start of the unfitness hearing (750 ILCS 50/1(D)(k) (West 2008)).

In March 2009, the State filed a first supplemental amendment to its amended petition to terminate parental rights, alleging, in pertinent part, that respondent father was an unfit parent under section 1(D)(i) of the Adoption Act, in that he was depraved because (1) he had at least three felony convictions and (2) one of his convictions occurred within five years of the filing of the State's petition seeking termination of his parental rights (750 ILCS 50/1(D)(i) (West 2008)).

At a February 2009 hearing, the trial court found respondent mother unfit based on her admission at the hearing that she had a drinking problem and was addicted to drugs. The State's evidence showed that (1) in May 2005, DCFS took Jay. H., Jas. H., and T.W. into protective custody (McLean County case No. 05-JA-56) based on respondent mother's substance-abuse issues; (2) respondent mother had attempted substance-abuse treatment

multiple times, including February 2007, in which she was diagnosed as opiate-, cocaine-, and alcohol-dependent; and (3) respondent mother tested positive for cocaine in November 2008.

At a May 2009 hearing, the trial court found respondent father unfit based on his admission at the hearing that he had at least three felony convictions, with one of those convictions occurring within five years of the filing of the State's petition. Without objection, the court admitted into evidence respondent father's 5 separate sentencing orders, showing his convictions over the previous 10 years (from 1998 through 2008) for (1) delivery of cannabis (2 separate convictions), (2) delivery of cocaine, (3) possession of cannabis, and (4) aggravated battery.

At respondents' best-interest hearing that immediately followed respondent father's May 2009 fitness hearing, the trial court took judicial notice, without objection, of the following documents from McLean County case No. 05-JA-56: (1) the docket entries, (2) the petition for adjudication of wardship, (3) the shelter-care order, (4) an investigative summary, (5) a social-history report, (6) the adjudicatory and dispositional reports and orders, and (7) various permanency orders and reports. The court also took judicial notice, without objection, of the following documents in this case: (1) the petitions, orders, and docket entries; (2) a June 2008 dispositional report; (3) two

October 2008 permanency reports; and (4) respondent mother's November 2008 and February 2009 positive drug-screen results.

In addition, at that best-interest hearing, the trial court also received and considered a May 2009 best-interest report, which was prepared by a DCFS-contracted caseworker who had been the sole caseworker assigned to respondents' case since its inception in May 2005. That report stated the following.

In May 2005, Jay. H., Jas. H., and T.W. were taken into protective custody (McLean County case No. 05-JA-56) because (1) respondent mother was found under the influence of cannabis and cocaine and (2) respondent father had an extensive criminal history that involved the possession and delivery of controlled substances. Although the caseworker characterized respondent mother's progress in completing her client-service-plan goals as inconsistent, in December 2007, Jay. H., Jas. H., and T.W. were returned to respondent father's care after he successfully completed his client-service-plan goals.

In February 2008, respondent mother was arrested for obstructing justice. At the time of her arrest, she was intoxicated, and she admitted that she had relapsed. Later that same month, DCFS took protective custody of Jay. H., Jas. H., and T.W. after police charged respondent father, in part, with delivery of cannabis. DCFS subsequently placed Jay. H., Jas. H., and T.W. with respondent father's sister, Tiffany Hodges, who had since

expressed a clear desire to adopt all three children.

In summarizing his finding, the caseworker provided the following:

"[Respondent mother] has not demonstrated that she is capable of caring for [Jay. H., Jas. H., and T.W.]  She has not been able to maintain sobriety for extended periods of time[, n]or has she been able to maintain a consistent income through any source other than [respondent father]. [Respondent father] is now incarcerated with a projected parole date of [February 29, 2013]. He has an extensive criminal history of drug charges.  The one stable parental figure [Jay. H., Jas. H., and T.W.] have had is Tiffany Hodges.  [Jay. H., Jas. H., and T.W.] need permanency with a parent they can depend on and trust to put their needs first. [I] strongly believe[] that [Jay. H., Jas. H., and T.W.] need the security, safety, and stability they would be afforded through adoption by Tiffany Hodges."

Respondent mother testified, in pertinent part, that she (1) had struggled with substance-abuse issues for about 20

years; (2) had maintained her sobriety for 7 months, which she had not accomplished since she was 14 years old; and (3) loved her children. In addition, respondent mother admitted that she (1) had not independently parented Jay. H., Jas. H., or T.W. throughout their lifetimes; (2) had not maintained a relationship with her other 11-year-old child, who lived in Kentucky with another aunt; and (3) might maintain her relationship with respondent father.

After considering the evidence, counsels' arguments, and the statutory factors under section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2008)), the trial court found, by a preponderance of the evidence, that it was in the minors' best interest to terminate (1) respondent mother's parental rights as to Jay. H., Jas. H., and T.W. and (2) respondent father's parental rights as to Jay. H. and Jas. H. (Although the court also terminated the parental rights of T.W.'s biological father, he is not a party to this appeal.)

Both respondents filed appeals, which this court sua sponte consolidated.

## II. RESPONDENTS' CLAIM THAT THE TRIAL COURT IMPROPERLY TOOK JUDICIAL NOTICE OF VARIOUS DOCUMENTS AT THE BEST-INTEREST HEARING

### A. The Trial Court's Decision To Take Judicial Notice of Various Documents

Respondents argue that the trial court improperly took judicial notice of various documents at the best-interest hear-

ing.  Initially, we note that because respondents failed to object at that hearing to the admission of the various documents about which they now complain, they have forfeited this argument on appeal.  See In re M.W., 232 Ill. 2d 408, 430, 905 N.E.2d 757, 772 (2009) (A respondent's failure to object at trial forfeits consideration of the claimed error on appeal unless respondent can demonstrate plain error).  Nonetheless, respondents urge this court to consider their claim under the plain-error doctrine because the best-interest hearing was fundamentally unfair in that the court took judicial notice of a "substantial quantum of incompetent evidence."

"This court may review an error under the plain-error doctrine if (1) the evidence is closely balanced or (2) the error is 'so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process.'"  People v. Hostetter, 384 Ill. App. 3d 700, 707, 893 N.E.2d 313, 319 (2008), quoting People v. Hall, 194 Ill. 2d 305, 335, 743 N.E.2d 521, 539 (2000).  However, before addressing whether respondents' forfeited claim constitutes plain error, we will first determine whether it constitutes any error at all.  People v. Owens, 372 Ill. App. 3d 616, 620, 874 N.E.2d 116, 118 (2007).

Based upon the following analysis of the interrelation-ship between the Juvenile Court Act and Adoption Act, we conclude

that we need not consider respondents' argument under a plain-error analysis because the trial court did not err.

### 1. Proceedings Under the Juvenile Court Act

The Juvenile Court Act sets forth the two-step process a trial court must employ in deciding whether a minor should be made a ward of the court. In re A.W., 231 Ill. 2d 241, 254, 897 N.E.2d 733, 740 (2008). The first step is the adjudicatory hearing on a petition for adjudication of wardship at which "the court shall first consider only the question whether the minor is abused, neglected[,] or dependent." 705 ILCS 405/2-18(1) (West 2008). In making that determination, the rules of evidence in the nature of civil proceedings apply. A.W., 231 Ill. 2d at 256, 897 N.E.2d at 741; 705 ILCS 405/2-18(1) (West 2008). If the trial court determines that the minor child is abused, neglected, or dependent, the court shall then proceed to the second step-- the dispositional hearing--and determine whether the minor should be made a ward of the court. In re Timothy T., 343 Ill. App. 3d 1260, 1262-63, 799 N.E.2d 994, 996 (2003); 705 ILCS 405/2-21(2) (West 2008). Proceedings at the dispositional hearing are governed by section 2-22(1) of the Juvenile Court Act, which provides as follows:

> "At the dispositional hearing, the court
> shall determine whether it is in the best
> interests of the minor and the public that he

- 9 -

be made a ward of the court, and, if he is to

be made a ward of the court, the court shall

determine the proper disposition best serving

the health, safety[,] and interests of the

minor and the public.  The court also shall

consider the permanency goal set for the

minor, the nature of the service plan for the

minor and the services delivered and to be

delivered under the plan.  <u>All evidence help-

ful in determining these questions, including

oral and written reports, may be admitted and

may be relied upon to the extent of its pro-

bative value, even though not competent for

the purposes of the adjudicatory hearing</u>."

(Emphasis added.)  705 ILCS 405/2-22(1) (West

2008).

The plain language of section 2-22(1) of the Juvenile

Court Act shows the legislature's intent to give trial courts

wide latitude in admitting evidence at the dispositional hearing.

<u>In re April C.</u>, 326 Ill. App. 3d 245, 261, 760 N.E.2d 101, 114

(2001); see also <u>In re D.L.</u>, 226 Ill. App. 3d 177, 187, 589

N.E.2d 680, 686 (1992) ("Although hearsay and other types of

incompetent evidence may not be admissible at the adjudicatory

hearing, they are admissible at the dispositional hearing").

2. Proceedings Under the Adoption Act

In In re D.F., 201 Ill. 2d 476, 494-95, 777 N.E.2d 930, 940 (2002), the supreme court outlined the following two-step process a trial court must employ when dealing with petitions to terminate parental rights under the Adoption Act:

"The involuntary termination of parental rights upon the petition of the State is governed by the Juvenile Court Act of 1987 [citation], and the Adoption Act [citation]. A two-step process is mandated. First, the State must show, by clear and convincing evidence, that the parent is 'unfit,' as that term is defined in section 1(D) of the Adoption Act [citation]. *** If the court makes such a finding, it will then consider whether it is in the best interest[] of the child that parental rights be terminated."

In addition, section 2.1 of the Adoption Act provides, in pertinent part, that the Adoption Act shall be construed in concert with the Juvenile Court Act. 750 ILCS 50/2.1 (West 2008).

3. The Formal Rules of Evidence Do Not
Apply at Best-Interest Hearings

Construing the Adoption Act in concert with the Juvenile Court Act, we hold that the Adoption Act is the structural

equivalent of the Juvenile Court Act.  Further, we note that this structural equivalency is hardly a new or novel concept.

In In re J.G., 298 Ill. App. 3d 617, 628-29, 699 N.E.2d 167, 175-76 (1998), this court rejected the State's argument that at a fitness hearing under the Adoption Act, the trial court could take judicial notice of the entire record that preceded the parental-termination proceeding without first finding that the contents of the court file were admissible under the civil rules of evidence.  In so doing, we concluded that it would be illogical to apply the rules of evidence to adjudicatory hearings, the result of which may only be temporary, but not to apply those same rules to parental-fitness hearings, where parents face permanent revocation of parental rights.  J.G., 298 Ill. App. 3d at 629, 699 N.E.2d at 175; see also In re M.S., 239 Ill. App. 3d 938, 946, 606 N.E.2d 768, 773 (1992) (where this court concluded that the civil rules of evidence apply to fitness hearings).

Further construing the acts under section 2.1 of the Adoption Act (750 ILCS 50/2.1 (West 2008)), we likewise conclude that the second step of both proceedings--the dispositional hearing under the Juvenile Court Act and the best-interest hearing under the Adoption Act--are functional equivalents.  These respective second steps are subject to the same relaxed standard regarding the admission of evidence--that is, the formal rules of evidence do not apply.  Thus, at both second-step

hearings, all evidence helpful (in the trial court's judgment) in determining the questions before the court may be admitted and may be relied upon to the extent of its probative value, even though that evidence would not be admissible in a proceeding where the formal rules of evidence applied.  See 705 ILCS 405/2-22(1) (West 2008).

In support of this conclusion, we note that the primary issue before the trial court in both dispositional hearings and best-interest hearings is the same--namely, what action is in the child's best interest?  See In re Y.A., 383 Ill. App. 3d 311, 315, 890 N.E.2d 710, 714 (2008) (the purpose of the dispositional hearing is for the trial court to determine what is in the child's best interest); see also In re B.B., 386 Ill. App. 3d 686, 697, 899 N.E.2d 469, 479 (2008) (the purpose of the best-interest hearing is to minimize further damage to the child by shifting the court's scrutiny to the child's best interest).

4. The Trial Court's Taking Judicial Notice Was Appropriate

As noted, respondents argue that the trial court erred by taking judicial notice of the aforementioned documents at the best-interest hearing.  We disagree.

Because cases under the Juvenile Court Act are sui generis and must be decided on the basis of their unique facts, this court gives great deference to the trial court's determinations at the dispositional hearing, given that the court is in

the best position to observe the demeanor of the witnesses and the parties, assess credibility, and weigh the evidence presented. In re Gabriel E., 372 Ill. App. 3d 817, 823, 867 N.E.2d 59, 65 (2007), citing In re Sharena H., 366 Ill. App. 3d 405, 415, 852 N.E.2d 474, 482 (2006). This same deferential standard of review applies to the court's determinations at the best-interest hearing. See In re D.M., 298 Ill. App. 3d 574, 581, 699 N.E.2d 212, 217 (1998) (the trial court's determination at the subsequent best-interest hearing is afforded great deference by the reviewing court).

The record shows that the various orders, reports, docket entries, and results of which the trial court took judicial notice solely concerned the parental relationship between respondents and Jay. H., Jas. H., and T.W. In particular, the evidence showed that in May 2005, DCFS took Jay. H., Jas. H., and T.W. into protective custody because (1) respondent mother was found under the influence of cannabis and cocaine and (2) respondent father had an extensive criminal history that involved the possession and delivery of controlled substances. These problems persisted until February 2008, when DCFS again took Jay. H., Jas. H., and T.W. into their protective custody because respondents continued to engage in the same destructive activities--that is, respondent mother continued her substance abuse and respondent father continued his illegal drug activity.

By taking judicial notice of the aforementioned evidence at the best-interest hearing, the trial court obviously viewed that evidence as probative of its determination as to what decision was in the best interest of Jay. H., Jas. H., and T.W. Because the court is allowed to consider all evidence that it finds helpful in answering the best-interest question, we conclude that the trial court did not err by taking judicial notice of the aforementioned documents.

III. THE TRIAL COURT'S BEST-INTEREST FINDINGS

Respondent mother and respondent father also argue that the trial court's best-interest findings were against the manifest weight of the evidence. We disagree.

After a finding of parental unfitness, the trial court must give full and serious consideration to the child's best interest. In re G.L., 329 Ill. App. 3d 18, 24, 768 N.E.2d 367, 372 (2002). At the best-interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination is in the child's best interest. In re D.T., 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004). When determining whether termination is in the child's best interest, the court must consider, in the context of a child's age and developmental needs, the following factors: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including

familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2008).

We will not reverse the trial court's best-interest determination unless it was against the manifest weight of the evidence. In re Tiffany M., 353 Ill. App. 3d 883, 890, 819 N.E.2d 813, 819 (2004). A decision is against the manifest weight of the evidence only if the facts clearly demonstrate that the court should have reached the opposite result. In re D.M., 336 Ill. App. 3d 766, 773, 784 N.E.2d 304, 310 (2002).

In this case, the evidence presented at the May 2009 best-interest hearing showed that respondent mother (1) had a substantial and serious history of alcohol and drug abuse, (2) admitted that she had problems maintaining her sobriety for any considerable length of time, and (3) had not maintained any independent parental relationship with Jay. H., Jas. H., or T.W. In addition, respondent father (1) had an extensive criminal

history that involved the possession, manufacturing, and delivery of controlled substances; (2) was currently incarcerated for manufacturing and distributing cannabis; and (3) would remain incarcerated until February 2013. Alternatively, since February 2008, Jay. H., Jas. H., and T.W. had been thriving in a loving, caring environment with Tiffany, respondent father's sister, who had (1) provided for the health, welfare, and emotional needs of Jay. H., Jas. H., and T.W. and (2) expressed a sincere interest in adopting them.

Our review of the record shows that the trial court appropriately applied this evidence to each of the statutory factors under section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2008)), finding that, in addition to other applicable factors, the current home environment, familiarity, sense of security, and continuity of affection afforded Jay. H., Jas. H., and T.W. warranted termination of respondents' parental rights.

Given our standard of review, we conclude that the court's finding that it was in the best interest of Jay. H., Jas. H., and T.W. to terminate respondents' parental rights was not against the manifest weight of the evidence.

IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

No. 4-09-0439--Affirmed.

No. 4-09-0460--Affirmed.

McCULLOUGH, P.J., and TURNER, J., concur.