2023 IL App (1st) 231022-U

SIXTH DIVISION
February 16, 2024

No. 1-23-1022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) ) | Appeal from the Circuit Court of Cook County, Criminal Division |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23 C 330101 |
| JAMES YOFON, | ) ) | The Honorable Joseph M. Cataldo, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1   Held:   The judgment of the circuit court is affirmed. The evidence was sufficient to sustain Yofon's conviction for aggravated driving under the influence of alcohol. Any evidentiary errors were harmless, and a new trial is not warranted.

¶ 2                                I. BACKGROUND

¶ 3   On March 5, 2022, James Yofon was arrested and charged with aggravated driving under the influence of alcohol in violation of 625 ILCS 5/11-501(a)(2) (West 2022). On January 31, 2023, his case was tried before a jury. The State presented two witnesses: Woodridge police officer Ariana Radic and Illinois State Police (ISP) Trooper Stanislaw Smalec.

¶ 4    Officer Radic testified that on March 5, 2022, around 3:30 p.m., she was driving to her mother's house while off duty. As she drove eastbound on I-90 in Cook County, she saw a single-vehicle crash and pulled over to help. Other motorists had already pulled over to help as well. Officer Radic went to the driver's side of the crashed vehicle and identified Yofon as the person in the driver's seat. She noticed the keys in the car's ignition and heard the engine running. The car was badly damaged. The air bags had deployed, and Radic could see white powder floating around the vehicle, which made her believe she arrived not long after the air bags had deployed. She asked Yofon if he was okay, and said that he appeared "confused" and "kind of out of it." He told her someone had cut him off. She and several other men then helped Yofon out of the vehicle. Paramedics arrived approximately five minutes later, and Radic let them take over.

¶ 5    ISP Trooper Smalec testified next. He said that he had served with the ISP for three years, and that he had previously worked as a Chicago Police Officer for seven years. He testified that on March 5, 2022, when he was on duty, he received an assignment around 3:32 p.m. to respond to a "single unit versus a wall" traffic crash. When he arrived on scene, he saw a white Kia crashed into the concrete wall along the right side of I-90. He said the vehicle was heavily damaged. He testified that the crash took place near the junction of I-90 and I-290. He explained that in this part of I-90, there were six lanes of traffic: four main lanes and two lanes which lead to I-290. Lanes five and six are the lanes farthest to the right. He explained that there is a concrete barrier dividing lanes five and six from the four lanes to the left, and that the attenuator – the "metal piece which kind of folds" and surrounds the concrete barrier so that the "impact is not as severe on the occupants of the car" – was completely destroyed.

¶ 6    Trooper Smalec said he learned that Yofon was the driver of the white Kia at the time of the crash. He spoke with Yofon for the first time in the presence of two paramedics inside the

responding ambulance. During their conversation, Smalec asked Yofon for his driver's license and asked him what happened. Yofon said that he had been cut off by a box truck when he was driving in lane four and that's what caused him to crash. Yofon then refused medical attention and exited the ambulance.

¶ 7    Trooper Smalec helped Yofon out of the ambulance because the steps were very steep. Afterwards, Yofon went straight towards the concrete wall for support, and used the wall to assist him as he walked. Smalec then asked Yofon to go with him to his squad car. Smalec testified that Yofon's eyes appeared glassy, and that he smelled a strong odor of alcoholic beverage coming from Yofon's breath as he spoke. Smalec explained that he did not smell the alcohol on Yofon's breath when they were inside the ambulance because the smell of hand sanitizer was very strong.

¶ 8    When they got to the squad car, Trooper Smalec told Yofon he could sit on the bumper, but instead, Yofon placed his forearms on the hood of the car, lowered his head, and took deep breaths. Smalec then asked Yofon if he had anything alcoholic to drink before he drove that day. Yofon initially said he had a beer, but then said he had two drinks. When asked, Yofon could not remember what the second drink was.

¶ 9    Trooper Smalec then performed a Standardized Field Sobriety Test (SFST) on Yofon. He explained that he had been trained to conduct SFSTs, and said he had given SFSTs "[a]t least [a] couple thousand times" before his interaction with Yofon. Smalec explained that SFSTs were designed to show consumption and impairment in someone who had been consuming alcohol. Smalec testified that he performed the Horizontal Gaze Nystagmus (HGN) test on Yofon, which tests how the eyes respond to a stimulus. He used his pen as a stimulus and passed the pen in front of Yofon's eyes several times. During these passes, he was looking for involuntary jerking of Yofon's eyes. He explained that there are a total of six possible clues of impairment involved in

the HGN test, and said he observed all six clues during Yofon's HGN test. Smalec decided not to perform any additional SFSTs on Yofon because Yofon complained that he "bent his knee" when he crashed and that his chest hurt from the deployment of the air bag.

¶ 10    Trooper Smalec testified that he believed Yofon was under the influence of alcohol. He based his opinion on Yofon's glassy eyes, the strong odor of alcohol on his breath, Yofon's decision to lean against the concrete wall and on Smalec's squad car for support, Yofon's performance on the SFST, Yofon's statement that he had two alcoholic drinks, and his inability to remember what the second alcoholic drink was. Smalec also based his opinion on the fact that Yofon was involved in a single vehicle crash and the fact that Yofon said he was going to exit on to I-290, but he was not in the correct lane to do so. Smalec explained that Yofon had been driving in lane four, but he needed to be in lane five or six to exit. He opined that Yofon overestimated his speed while trying to reach exit lanes five and six and then struck the attenuator without the involvement of any other vehicle. He did not believe Yofon's story that another car had cut him off. Smalec arrested Yofon for driving under the influence of alcohol and transported him to the police station. At the station, Yofon was asked to give a breath sample, but he refused.

¶ 11    On cross examination, Trooper Smalec admitted that Yofon did not slur his words or speak with a thick tongue. He also admitted that he could not tell from the smell of alcohol on Yofon's breath how many drinks he had consumed or when, and that Yofon's glassy eyes could have been caused by things other than drinking, including particles coming from the air bag. Finally, he admitted that Yofon did not fall, swagger, or sway when walking, but said that a person who is under the influence of alcohol does not necessarily do any of these things.

¶ 12    Trooper Smalec testified that his interactions with Yofon were captured on the video footage from his squad camera. The video was admitted into evidence and played for the jury.

¶ 13 The defense moved for a directed verdict after the State rested its case, which the court denied. After Yofon elected not to testify, the defense presented a single witness, paramedic Benjamin Olson. Olson testified that he was employed as a paramedic by the Hoffman Estates Fire Department. He said that he had held this role for more than five years, and that he previously worked as a paramedic with the St. Charles Fire Department. On March 5, 2022, around 3:30 p.m., he responded to a one-vehicle crash on the highway. When he arrived, there was already a fire engine and other responders on scene. Olson learned that Yofon had been involved in the crash and then began his patient assessment.

¶ 14 Olson testified that he had thousands of opportunities in his personal and professional capacities to observe someone under the influence of alcohol. During his assessment of Yofon, he said he did not observe any behaviors that would lead him to believe that Yofon was under the influence of alcohol. Olson said Yofon was moving kind of slowly, but testified that he could easily communicate with Yofon. When they were in close proximity inside the ambulance, Olson did not detect an odor of alcohol on Yofon's breath. Olson testified that he asked Yofon if he wanted to go to the hospital, but Yofon refused. He testified that he was wearing a mask while he interacted with Yofon, and that their interactions lasted about fifteen minutes. Yofon was then released from Olson's care.

¶ 15 The jury found Yofon guilty. The court denied Yofon's motion to reconsider. Yofon was sentenced to twenty-four months of felony probation and was required to submit to a drug and alcohol evaluation, attend a victim impact panel, pay mandatory fines and costs, and wear a secure continuous remote alcohol monitor bracelet for the first six months of his probation. He was also sentenced to serve 100 days in Cook County jail, with the understanding that the time would be served by wearing the monitor.

¶ 16                                    II. ANALYSIS

¶ 17                           A. Sufficiency of the Evidence

¶ 18    Yofon argues that the evidence was insufficient to show that he was driving under the influence on March 5, 2022. "[A]fter viewing the evidence in the light most favorable to the prosecution," we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Smith,* 185 Ill. 2d 532, 541 (1999). We "will not substitute [our] judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown,* 2013 IL 114196, ¶ 48. It is the trial court that "remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Wright,* 2017 IL 119561, ¶ 70. We will reverse only if "the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt of the defendant's guilt." *People v. Norris,* 399 Ill. App. 3d 525, 531 (2010).

¶ 19    A jury found Yofon guilty of aggravated driving under the influence of alcohol in violation of 625 ILCS 5/11-501(a)(2) (West 2022). To be convicted of driving under the influence of alcohol, a defendant must have been driving or had "actual physical control of a motor vehicle" and he must have been "under the influence of alcohol."

¶ 20    Yofon does not dispute that he was in actual physical control of the white Kia at the time of the accident on March 5, 2022. Accordingly, the only issue here is whether there was sufficient evidence to demonstrate that Yofon was under the influence of alcohol. "To find the defendant guilty of driving under the influence, the prosecution must establish that the defendant was under the influence of alcohol to a degree that renders him or her incapable of driving safely." *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20. Circumstantial evidence alone may suffice to meet this

burden. *Id*. This evidence may include testimony that a defendant's breath smelled of alcohol or that his eyes were glassy and bloodshot. *Id*. A defendant's refusal to submit to a breath test is also relevant as evidence of defendant's consciousness of guilt. *Id*. "The testimony of a single, credible police officer may alone sustain a conviction for driving under the influence of alcohol." *People v. Phillips,* 2015 IL App (1st) 131147, ¶ 18.

¶ 21    Relying on *People v. Thomas*, 34 Ill. App. 3d 578 (1975), *People v. Clark,* 123 Ill. App. 2d 41 (1970), and *People v. Schultz*, 10 Ill App. 3d 602 (1973), Yofon argues that the evidence was insufficient to "establish that he was impaired at the time of the accident." However, all three cases are distinguishable due to the seriousness of the injuries sustained by the defendants, which could have affected the officers' opinions, and the lack of evidence of impairment. In *Thomas*, the court found the evidence insufficient to support defendant's driving under the influence conviction because the defendant "was suffering from a head injury so severe that he required a serious operation *** and the arresting officer based his opinion of intoxication upon symptoms which could have been the results of the injury." 34 Ill. App. 3d at 582. In *Clark,* the court found the evidence insufficient to sustain defendant's conviction for driving under the influence where defendant denied drinking any alcohol, no sobriety tests were given, the only evidence of defendant's intoxication was an officer's testimony that he "smelled the strong odor of alcohol on [defendant's] breath," and testimony that defendant was "stumbling, swaying, [and] thick-tongued" could have been due to injuries defendant sustained after his head crashed through the windshield and he was knocked unconscious. 123 Ill. App. 2d at 44-45. And in *Schultz*, the court found the evidence insufficient to support defendant's conviction for driving under the influence where defendant denied drinking alcohol, the smell of alcohol the officer noticed could be "explained by the defendant having washed herself with alcohol" when she was working at a

nursing home shortly before she interacted with the officer, there was "no evidence, independent of the policeman's testimony, that [defendant] had anything to drink minutes before the accident[,]" and "[h]er swaying and staggering could have resulted from her loss of consciousness and her head and leg injuries" sustained in the accident. 10 Ill App. 3d at 603-04.

¶ 22    Here, by contrast, when the evidence is viewed in the light most favorable to the prosecution, we find it sufficient to support Yofon's conviction for aggravated driving under the influence of alcohol. First, Officer Radic testified that Yofon seemed "confused" and "kind of out of it" when she spoke with him. Second, Yofon admitted to Trooper Smalec that he drank two alcoholic beverages before he drove that afternoon, but he could not even remember what the second drink was. Third, Smalec testified that Yofon's eyes were glassy, and that he could smell the strong odor of an alcoholic beverage coming from Yofon's breath. Fourth, Smalec testified that Yofon leaned on the wall and on his squad car for support. Fifth, Yofon failed the HGN test that was administered to him. Courts have upheld convictions based on similar facts. See, *e.g.*, *People v. Janik*, 127 Ill. 2d 390, 402 (1989) (finding the evidence sufficient to support defendant's conviction for driving under the influence when an officer testified that she smelled alcohol on the defendant's breath, he had watery eyes, he admitted that he spent the afternoon in a bar drinking, and he performed poorly on two field sobriety tests). Additional evidence supported Yofon's conviction as well. Yofon crashed his car into the concrete wall on the side of the highway, and no other vehicles were involved. Although Yofon told Officer Radic and Trooper Smalec that a truck cut him off, Smalec did not believe him. Smalec explained that although Yofon claimed he was preparing to exit on to I-290, he was not in the right lane to do so. In addition, Yofon refused to take a breath test at the police station, providing evidence of his consciousness of guilt. *Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 23    The fact that paramedic Olson did not observe any indicia of intoxication or smell alcohol on Yofon's breath does not affect our conclusion. See *Janik,* 127 Ill. 2d at 402-03 (upholding the defendant's conviction for driving under the influence even though defendant's wife's testimony– that she did not smell alcohol on defendant's breath and he did not appear intoxicated to her– contradicted the police officer's assertions, finding that it was the jury's duty to resolve any conflicts in the evidence, and "the jury was apparently satisfied, based on [the police officer's] testimony and the other evidence, that defendant was intoxicated."). Accordingly, the evidence was sufficient to convict Yofon of aggravated driving under the influence of alcohol.

¶ 24    B. The Trial Court Properly Rejected Yofon's Non-Illinois Pattern Jury Instructions

¶ 25    Yofon also argues that the trial court's decision to reject his requested non-Illinois Pattern Jury Instructions (non-IPIs) warrants reversal and a new trial. We review a trial court's decision whether to give the jury non-IPIs for an abuse of discretion. *People v. Ortiz,* 2017 IL App (1st) 142559, ¶ 50. An abuse of discretion occurs "where there is no IPI instruction applicable to the subject and the jury was left to deliberate without proper instructions." *People v. Rebecca*, 2012 IL App (2d) 091259, ¶ 69. "Refusal to give a non-IPI instruction does not constitute an abuse of discretion if there is an applicable IPI instruction and/or the essence of the refused instruction is covered by the instruction given." *Id.*

¶ 26    At the close of trial, the court held a jury instruction conference with the parties. All of the proposed Illinois Pattern Jury Instructions (IPIs) were given without objection. Defense counsel then requested two non-IPI instructions. The first stated, "The testimony of a police officer should not be given more weight or credibility merely because the witness is a police officer. You should judge the testimony of a police officer in the same manner you judge the testimony of any other witness." The State objected to this instruction, arguing that IPI 1.02 "already covers what defense

9

counsel is trying to establish with a [non-IPI]" and already "talks about the believability of witnesses and the weight that needs to be given to-each of them." IPI 1.02 states, "Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." The court declined to give Yofon's proposed non-IPI instruction, reasoning that "at the beginning of the jury selection" it had "asked the jurors about that and instructed them that *** [they were] not to give more credibility" to police officers over others.

¶ 27    Defense counsel's second requested non-IPI instruction stated, "The positive testimony of a witness which is uncontradicted or unimpeached cannot be disregarded unless there is an inherent probability in the witness testimony." The State objected to this non-IPI instruction as well, arguing that it was already covered by the other instructions. The court stated, "I don't think this instruction is appropriate. I think 1.02 would go to the believability of a witness. I don't know that the testimony [of any witness] is uncontradicted or unimpeached. So that will be denied."

¶ 28    "The function of jury instructions is to convey to the jury the correct principles of law applicable to the submitted evidence[.]" *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 507 (2002). "As a general rule, where an appropriate IPI instruction exists on a subject upon which the trial court has determined the jury should be instructed, the IPI must be used." *People v. Pollock,* 202 Ill. 2d 189, 212 (2002). Illinois Supreme Court Rule 451(a) states that "[w]henever Illinois Pattern Jury Instructions, Criminal, contains an instruction applicable in a criminal case, *** [it] shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. April 8, 2013). Therefore, "[a] non-IPI instruction should be used only if the IPIs for criminal cases

10

do not contain an accurate instruction and if the tendered non-IPI instruction is accurate, simple, brief, impartial, and free from argument." *Ortiz,* 2017 IL App (1st) 142559, ¶ 50. "In reviewing the adequacy of instructions, [we] must consider the jury instructions as a whole to determine whether they fully and fairly cover the law." *People v. Nutall*, 312 Ill. App. 3d 620, 633 (2000).

¶ 29    Yofon argues that "in the absence of [his requested non-IPIs], the jury was free to disregard *** [the testimony of] Paramedic Olson, thereby only giving credence to the testimony of Trooper Smalec." However, IPI 1.02 correctly instructed the jury about the credibility of the witnesses and the weight to be given to their testimony. Therefore, Yofon's proposed non-IPIs–which addressed the credibility of witnesses and the weight to be given to their testimony–were merely cumulative. See *People v. Emerson,* 189 Ill. 2d 436, 505 (2000) (finding no abuse of discretion when the court refused a nonpattern instruction where the "subject matter of defendant's proposed instructions was [already] covered by two pattern instructions"); *People v. Burgos*, 243 Ill. App. 3d 993, 1004 (1993) (finding no abuse of discretion when the trial court refused to instruct the jury that "the testimony of the police officers should be judged in the same manner as any other witness" because a general pattern jury instruction concerning the credibility of witnesses was given and it "adequately addresse[d] the same issue"). Moreover, the court "asked the jurors if they would give a police officer's testimony more weight than any other witness [during voir dire]; and each juror answered no." Accordingly, we find that the jury was properly instructed and the trial court did not abuse its discretion when it denied Yofon's requested non-IPIs.

¶ 30    C. Any Error Related to the Trial Court's Decision to Exclude Certain Statements was Harmless

¶ 31    Yofon also argues that he should have been granted a new trial based on the court's "improper rulings on hearsay objections." This argument is based on three objections the court

sustained during paramedic Olson's testimony. First, defense counsel asked Olson, "Did [Yofon] relate to you any injuries he sustained at that time?" The State objected on hearsay grounds, and the court sustained the objection. Second, defense counsel asked Olson, "Did you ever determine what injuries, if any, [Yofon] sustained?" After Olson responded that "[Yofon] was complaining of left shoulder pain[,]" the State objected on hearsay grounds. The court sustained the objection and instructed the jury to "disregard anything the defendant said." Third, defense counsel asked Olson, "As part of your assessment in treating [Yofon], did you determine how the accident happened; what the basis was?" Olson responded that he "asked [Yofon] a question of how it happened." Defense counsel followed up by asking, "What did you learn?" The State then objected on hearsay grounds a third time. After the court sustained the objection, defense counsel asked for a side bar. He argued that the statement was "not being offered for the truth of the matter as to how the accident happened, but it certainly goes to the consciousness of guilt issue." He argued that he "should be able to get into the fact that [Yofon was] telling people what happened before there's any criminality." The State responded that the hearsay was being offered for "the truth of the matter asserted. It's going to show that there was a car and that's why [Yofon] swerved or got into the accident. That's what defense counsel is using it for." Defense counsel alternatively argued that "[i]t goes to mental state[,]" but the court agreed with the State, found that the statement was being offered for the truth of the matter asserted, and sustained the State's objection.

¶ 32    On appeal, Yofon argues that the trial court's rulings were "highly prejudicial to Mr. Yofon as it prevented the Jury from hearing and considering the nature and extent of Mr. Yofon's injuries to his head, chest, and leg, and prevented the Jury from considering those injuries while evaluating Mr. Yofon's conduct and acts including walking, that were recorded on video and published to the

Jury." He argues that these statements should have been admitted under the "statements for purposes of medical treatment" and "state of mind" exceptions to the hearsay rule.

¶ 33　We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Hearsay is an out-of-court statement made by a declarant that is offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Generally, hearsay evidence is inadmissible unless an exception applies. *In re A.S.,* 2020 IL App (1st) 200560, ¶ 26. One of these exceptions allows "[s]tatements made for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing *** past or present symptoms, pain, or sensations" to be admitted. Ill. R. Evid. 803(4)(A) (eff. Sept. 28, 2018).

¶ 34　Here, we find that the trial court abused its discretion when it sustained the State's objections to defense counsel's questions, because they fell within the scope of Rule 803(4)(A). These questions concerned statements Yofon made about his injuries and the cause of the accident during the course of paramedic Olson's medical assessment, so they should have been admitted.

¶ 35　Although the trial court erroneously sustained the State's objections, these errors were harmless because the jury heard testimony about Yofon's explanation for the cause of the accident and was presented with evidence about Yofon's injuries. Both Officer Radic and Trooper Smalec testified that Yofon told them someone had "cut him off" and Smalec testified that Yofon told him "that's what caused him to crash." In addition, the jury heard testimony about Yofon's injuries and viewed the videotape from Trooper Smalec's vehicle, which depicted Yofon's physical condition shortly after the accident. Smalec testified that Yofon "said he bent his knee when he crashed his vehicle and that his chest was hurt from the air bag deployment" and that he "discontinued" the field sobriety tests "due to [Yofon] complaining of his injuries." Paramedic Olson also stated that Yofon "complain[ed] of his injuries." However, Olson admitted that he "did not observe any

obvious injuries" on Yofon and testified that he was "comfortable" releasing Yofon after he refused further medical treatment. Moreover, the jury could see Yofon walking alongside Trooper Smalec in the video and hear their conversation, which included Trooper Smalec telling Yofon he was not going to perform any additional sobriety tests because he knew Yofon was "banged up" in the accident. For these reasons, any errors were harmless, and reversal is not warranted.

¶ 36                                    III. CONCLUSION

¶ 37     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 38     Affirmed.